IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TRAE JAVAR COMPTON, | : | |
|     Petitioner, | : | 1:18-cv-0220 |
| | : | |
| v. | : | Hon. John E. Jones III |
| | : | |
| DAVID J. EBBERT, | : | |
|     Respondent. | : | |

## **MEMORANDUM**

### **September 3, 2019**

Presently before the court is a petition for writ of habeas corpus (Doc. 1) pursuant to 28 U.S.C. § 2241, filed by Petitioner Trae Javar Compton ("Compton"), a federal inmate. Compton contends that his due process rights were violated during the course of a multitude of prison disciplinary proceedings conducted while he was incarcerated at the United States Penitentiary at Lewisburg ("USP-Lewisburg"). (Doc. 1). He also alleges that he is being illegally held in the Special Management Unit ("SMU").

The petition is ripe for disposition and, for the reasons that follow, will be denied.

## I. BACKGROUND

### A. Disciplinary Proceedings

Compton alleges that the disciplinary proceedings that transpired following the issuance of Incident Report Numbers 2928319, 2928499, 2928836, 2943200 and 2928416, violated his due process rights.

#### 1. Incident Report Numbers 2928319, 2928499, 2928836, 2943200

Respondent contends that Compton failed to exhaust the administrative review procedure for Incident Report Numbers 2928319, 2928499, 2928836, 2943200. The BOP has established a multi-tier system whereby a federal prisoner may seek formal review of any aspect of his imprisonment. (Doc. 6-1, Declaration of Federal Bureau of Prisons Attorney Advisor Erin Odell ("Odell Decl."), ¶ 4 28 C.F.R. §§ 542.10, *et seq.*). The system first requires that an inmate present their complaint to staff before filing a request for Administrative Remedy, which staff shall attempt to informally resolve. (*Id.*, citing 28 C.F.R. § 542.13(a)). If informal resolution is unsuccessful, an inmate may file a formal written complaint to the Warden, or BP-9, on the appropriate form, within twenty calendar days of the date on which was the basis of complaint occurred. (*Id.*, citing 28 C.F.R. § 542.14(a)). If the inmate is dissatisfied with the Warden's response, he may file an appeal to the Regional Director, or BP-10, within twenty calendar days. (*Id.*, citing

28 C.F.R. § 542.15(a)).  The Regional Director has thirty calendar days to respond. (*Id.*, citing 28 C.F.R. § 542.18).  Finally, if the inmate is dissatisfied with the Regional Director's response, that decision may be appealed to the BOP's General Counsel at Central Office, or BP-11, within thirty calendar days from the date of the Regional Director's response.  (*Id.*, citing 28 C.F.R. § 542.15(a)).  The Central Office has forty calendar days to respond.  (*Id.*, citing 28 C.F.R. § 542.18).

A request for administrative relief may be rejected at any level if not in proper form or timely submitted.  (*Id.* at ¶ 5).  When an administrative remedy is rejected, all filings are returned to the inmate with a written notice containing an explanation of the rejection. (*Id.* citing 28 C.F.R. § 542.17(b)).  The BOP does not retain a copy of the rejection filings. (*Id.*).  A rejection of an administrative remedy does not constitute consideration of the issue on the merits.  (*Id.*).

With respect to disciplinary hearing decision appeals, an inmate can initiate the first step of the administrative review process by filing a direct written appeal using the appropriate BP-10 form to the BOP's Regional Director (thus bypassing the institutional level of review) within twenty days after receiving the disciplinary hearing officer's written report.  28 C.F.R. § 542.14(d)(2).  If dissatisfied with the Regional Director's response, an appeal using the appropriate BP-11 form may be filed within thirty calendar days with the Central Office. 28 C.F.R. §§ 542.15(a).

3

This is the inmate's final available administrative appeal. An administrative remedy appeal has not been fully exhausted until it has been considered on its merits by the BOP's Central Office. (*Id.* at ¶ 4, citing 28 C.F.R. §§ 542.10-542.19).

### a. *Incident Report Number 2928319*

On January 23, 2017, the Disciplinary Hearing Officer ("DHO") found Compton guilty of Code 205 of the Inmate Discipline Policy, Engaging in a Sexual Act, and sanctioned him with a disallowance of twenty-seven days of good conduct time, disciplinary segregation and loss of various privileges. (Doc. 6-1, p. 49). On February 21, 2017, Compton appealed the DHO's findings *via* administrative remedy 892549-R1. (*Id.* at 26). The Regional Office rejected the appeal because it was untimely and contained more than one letter-sized continuation page. (*Id.*). He was directed to provide staff verification indicating that the untimely filing was not his fault and to resubmit his appeal in proper form within ten days of the date of the rejection notice. (*Id.*). On March 3, 2017, Compton filed administrative remedy 892549-R2. (*Id.* at 28). The Regional Office rejected the appeal on March 7, 2017, because it was untimely and did not include the required staff verification concerning the untimeliness. (*Id.*). The Regional Office again afforded Compton time to resubmit his appeal in proper form. (*Id.*). On May 1, 2017, the Regional

Office received administrative remedy 892549-R3. (*Id.* at 29). On May 3, 2017, the Regional Office rejected the appeal because Compton failed to follow the instructions provided on the prior rejection notices. (*Id.*). Compton filed no further administrative remedy appeals related to Incident Report Number 292831. (Doc. 6-1, Odell Decl., ¶ 10).

### b. *Incident Report Number 2928499*

On January 23, 2017, the DHO found Compton guilty of Code 205 of the Inmate Discipline Policy, Engaging in a Sexual Act, and sanctioned him with a disallowance of twenty-seven days of good conduct time, disciplinary segregation and loss of various privileges. (Doc. 6-1, p. 56). On February 21, 2017, Compton filed administrative remedy 892550-R1 appealing the DHO's finding of guilt. (*Id.* at 26). The Regional Office rejected the appeal on February 22, 2017, because it was untimely and contained more than one letter-sized continuation page. (*Id.*). Compton was directed to resubmit the appeal in proper form accompanied by staff verification confirming that the untimely filing was not his fault. (*Id.*). On March 3, 2017, Compton resubmitted administrative remedy 892550-R2 with the Regional Office; the Regional Office rejected the appeal because it was not accompanied by the required staff verification. (*Id.* at 27). He was provided an additional ten days to resubmit the appeal in proper form. (*Id.*). He filed

5

administrative remedy 892550-R3. (*Id.* at 32). The Regional Office rejected the appeal as untimely. (*Id.*). Compton did not file any further appeals related to Incident Report Number 2928499. (Doc. 6-1, Odell Decl., ¶ 11).

### c. *Incident Report Number 2928836*

On January 23, 2017, the DHO found Compton guilty of Code 298/206 of the Inmate Discipline Policy, Interfering with Staff most like Making a Sexual Proposal, and sanctioned him with a disallowance of twenty-seven days of good conduct time, forfeiture of 121 days non-vested good conduct time, disciplinary segregation, loss of various privileges and a nominal fine. (Doc. 6-1, p. 64). Compton appealed the DHO's decision on February 21, 2017 by filing administrative remedy 892551-R1. (*Id.* at 27). The Regional Office rejected the appeal because it was untimely and not in proper form. (*Id.*). The Regional Office instructed him to resubmit the appeal in proper form and to provide staff verification indicating that the reason the appeal was untimely was not his fault. (*Id.*). He refiled the appeal on March 3, 2017. (*Id.* at 28). The Regional Office rejected the appeal because Compton failed to include the staff verification on the untimeliness. (*Id.*). The Regional Office granted him ten days to resubmit the appeal in proper form. (*Id.*). Compton took no further administrative action on Incident Report Number 2928836. (Doc. 6-1, Odell Decl., ¶ 12).

### d. Incident Report Number 2943200

On February 21, 2017, the DHO found Compton guilty of Code 205 of the Inmate Discipline Policy, Engaging in a Sexual Act, and sanctioned him with a disallowance of twenty-seven days of good conduct time, disciplinary segregation and loss of various privileges. (Doc. 6-1, p. 72). Compton did not appeal the DHO's findings or avail himself of the administrative review process. (Doc. 6-1, Odell Decl., ¶ 13).

### 2. Incident Report Number 2828416

On March 18, 2016, Compton received Incident Report Number 2828416 charging him with Engaging in Sexual Acts in violation of Code 205, Indecent Exposure in violation of Code 300, and Refusing to Obey an Order in violation of Code 307, based on the following incident: "On 3/18/2016 at approximately 11:22 AM, while passing out supplies on the second floor of D-block [C.O. J. Rishel] observed inmate Compton, Trae #26710-057, in cell 209 standing at the cell door which he appeared to be masturbating. When [C.O. J. Rishel] approached cell 209 housed by inmates Compton and Bulluck #24202-57, inmate Compton then pulled out his erect penis and began stroking it in an up and down motion while smiling. [C.O. J. Rishel] then gave inmate Compton a direct order to cease his actions which he refused and continued his actions." (Doc. 6-1, p. 41).

Lieutenant R. Troutman delivered the incident report to Compton at 12:20 p.m. on March 18, 2016. (*Id.*). The lieutenant advised Compton of his right to remain silent; Compton verbally acknowledged he understood his rights. (*Id.* at 43). Compton opted not to make a statement and declined to identify any witnesses. (*Id.*). The lieutenant referred the incident report to the Unit Discipline Committee (UDC) for further action. (*Id.*).

He appeared before the UDC and stated "I didn't do it." (*Id.* at 42). The UDC referred the charges to the DHO for further hearing because appropriate sanctions were not available to the UDC. (*Id.*) Compton received notice of the DHO hearing and notice of his rights at the hearing. (*Id.* at 44-45). He refused to acknowledge receipt of the forms. (*Id.*).

Initially, during the March 22, 2016 disciplinary hearing, the DHO advised Compton of his rights; Compton indicated that he understood them. (*Id.* at 37). Staff Representative Correctional Counselor J. Diltz appeared per Compton's request. (*Id.*). "Mr. Diltz stated inmate Compton made no specific requests of him as a staff representative in this case. Mr. Diltz stated he had no first-hand knowledge of the incident in this case. Mr. Diltz stated he had no further information to present, nor statement to make, regarding this case." (*Id.*) Inmate Compton confirmed that he made no specific request of Diltz. (*Id.*)

8

Compton presented no documentary evidence, and denied the charges against him. (*Id.*). He testified that the description of the incident was inaccurate. Specifically, he testified "me and my cellie (Bulluck, Andre #24202-057) just finished working out. I was standing at the sink washing my underarms. My cellie was standing right there beside me at the cell door. She (the reporting officer) was walking by the cell. She looked in the cell door and stated "what are you looking at?" I said "I'm looking at you." She got offended by that and walked away from the cell door. The next thing I knew I was getting an incident report charging me with Engaging in a Sexual Act. That never happened. She made it up." (*Id.*). The DHO noted that Compton made no complaints of procedural irregularities during the hearing. (*Id.*).

Compton requested that his cellmate, Bulluck, be called as a witness. The DHO summarized his testimony as follows:

> Inmate Bulluck testified he and his cellmate Compton [ ] had just finished working out. Bulluck testified that after they were finished, Compton wanted to "wash up", so he tied a bed sheet across the cell for privacy. Bullock testified he was standing near the rear wall of the cell, by the window, when he saw the reporting officer walk by the cell. Bulluck testified "I honestly couldn't see what he was doing because he had the sheet up. The only thing I could see was his head. I just assume he was "washing up"." In response to questions posed by the DHO, Bulluck testified he did not hear the reporting officer or Inmate Compton say anything to each other during the incident.

(*Id.*).

The DHO found that Compton committed the Code 205 violation of Engaging in a Sexual Act. In doing so he relied on the eyewitness account of the reporting officer contained in the Incident Report, Compton's testimony, and the testimony of his cellmate, Bulluck. (*Id.* at 38, 39). The DHO gave the greater weight of the evidence to the reporting officer. (*Id.* at 39). Although he considered the testimony of Compton and Bulluck, he found that evidence to be less credible for a number of reasons. (*Id.*). He noted the following:

> First, there are no points of the inmates' testimony which corroborates that of the other. In fact, the inmates' testimony in its entirety contradicts and conflicts with that of the other… The fact [that] the inmates' testimony contradicts and conflicts with one another with regard to these important facts related to the incident critically detracts from the credibility of the whole of the testimony of each of the inmates in this case, and leads the DHO to conclude that the inmates were simply presenting testimony which they believed would lead the DHO to conclude Compton did not commit a prohibited act in this case, regardless of the truthfulness or accuracy of the testimony. The DHO has determined that, if the inmates were being completely forthright in their respective testimonies in their entirety, then their accounts of the incident should have been the same, or remarkably similar, particularly with regard to such crucial facts as where each of the inmates were located in the cell at the time the incident occurred, and whether the reporting officer and/or Compton spoke to one another during the incident.

(*Id.*).

In sanctioning him with the disallowance of twenty-seven days of good conduct time, disciplinary segregation and loss of various privileges, the DHO set forth the following rationale:

> Engaging in sexual acts in a correctional institution, particularly inmates manually stimulating their genitals in view of female staff, is demeaning to staff and undermines their authority. Undermining staff authority ultimately jeopardizes the security and good order of the institution. The rationale for the sanctions imposed in this case, therefore, is to punish the inmate for his misconduct, which is viewed as having an adverse effect on the security and orderly operation of the institution, as well as to deter future misconduct. Disciplinary Segregation is imposed as punishment for the misconduct. Disallowed Good Conduct Time is imposed to demonstrate that engaging in misconduct will prolong inmate Compton's period of incarceration. Loss of commissary, telephone, and visiting privileges are imposed to demonstrate that engaging in misconduct will result in the loss of pleasurable privileges while incarcerated. Finally, loss of mattress is imposed as a sanction, as all other sanctions previously imposed have had no deterrent effect with regard to inmate Compton's repetitive commission of a variety of prohibited acts.

(*Id.*).

Compton appealed the DHO's decision through all levels of the administrative review process. (*Id.* at 21, 23). The DHO's decision was upheld throughout the administrative process.

### B. SMU Placement

On July 5, 2017, Compton sought relief from his alleged illegal placement in the SMU *via* the administrative review process. (Doc. 6-1, p. 30). The Warden

rejected the request because Compton failed to submit the proper number of continuation pages. (*Id.*). Compton refiled the request on July 11, 2017. (*Id.*). The Warden denied Compton's request for relief on July 17, 2017. Compton appealed the denial on August 21, 2017. (*Id.* at 32). The Regional Office rejected the appeal because it was untimely and instructed Compton to provide a memorandum from staff verifying that the untimely filing was not his fault within ten days. (*Id.*). Compton resubmitted the appeal on August 30, 2017. (*Id.* at 33). The Regional Office rejected the appeal because it did not include the required staff memo regarding untimeliness and afforded Compton an additional ten days to correct the defects and resubmit the appeal.. (*Id.*). Compton did not resubmit the appeal or seek any additional administrative relief with regard to his placement in the SMU. (Doc. 6-1, Odell Decl. ¶ 14).

## II. <u>DISCUSSION</u>

A federal habeas court may only extend a writ of habeas corpus to a federal inmate if he demonstrates that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3).

### A. **Incident Report Numbers 2928319, 2928499, 2928836, 2943200, and SMU Placement**

Respondent argues that the petition should be denied with respect to Incident Report Numbers 2928319, 2928499, 2928836, 2943200, and the alleged illegal

placement in the SMU, based on Compton's failure to exhaust his administrative remedies prior to seeking review in federal court. (Doc. 6, pp. 21-25). Despite the absence of a statutory exhaustion requirement attached to § 2241, courts have consistently required a petitioner to exhaust administrative remedies prior to bringing a habeas claim under § 2241. *Callwood v. Enos*, 230 F.3d 627, 634 (3d Cir. 2000); *Moscato v. Federal Bureau of Prisons*, 98 F.3d 757, 760 (3d Cir. 1996). Exhaustion is required "for three reasons: (1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy." *Moscato*, 98 F.3d at 761-62 (citing *Bradshaw v. Carlson*, 682 F.2d 1050, 1052 (3d Cir. 1981)). However, exhaustion of administrative remedies is not required where exhaustion would not promote these goals. *See, e.g., Gambino v. Morris*, 134 F.3d 156, 171 (3d Cir. 1998) (exhaustion not required where petitioner demonstrates futility); *Lyons v. U.S. Marshals*, 840 F.2d 202, 205 (3d Cir. 1988) (exhaustion may be excused where it "would be futile, if the actions of the agency clearly and unambiguously violate statutory or constitutional rights, or if the administrative procedure is clearly shown to be inadequate to prevent irreparable harm"); *Carling v. Peters*, No. 00-2958, 2000

WL 1022959, at *2 (E.D.Pa. July 10, 2000) (exhaustion not required where delay would subject petitioner to "irreparable injury").

It is clear from the record that, with regard to Incident Report Numbers 2928319, 2928499, 2928836, 2943200, and the Alleged Illegal Placement in the SMU, Compton failed to correct the deficiencies at the Regional Office level and never sought review by the Central Office. As noted *supra*, the Central Office is the inmate's final available administrative appeal and no administrative remedy appeal is considered to have been fully exhausted until pursued through all levels. 28 C.F.R. § 542.15(a)). The record clearly demonstrates that Compton failed to fully exhaust his administrative remedies with regard to the enumerated incident reports and his challenge to his SMU placement. Compton concedes as much in his Traverse. (Doc. 7, p. 2).

Importantly, there is nothing in the record that compels excusing exhaustion. Compton does not demonstrate futility by identifying BOP actions that would clearly and unambiguously violate statutory or constitutional rights, and he has not alleged any facts that would permit this Court to find that exhaustion of his administrative remedies would subject him to "irreparable injury." Despite being afforded numerous opportunities to do so, Compton failed to "avail [] himself of every process at every turn (which would require all appeals to be timely pursued,

14

etc.)." *Spruill v. Gillis*, 372 F.3d 218, 228 (3d Cir. 2004). Because he has not alleged facts that would permit a finding that exhaustion would have been futile, or that requiring exhaustion would subject him to "irreparable injury," the petition will be denied for failure to exhaust administrative remedies with respect to Incident Report Numbers 2928319, 2928499, 2928836, 2943200, and the alleged illegal placement in the SMU. To hold otherwise would frustrate the purposes of the exhaustion doctrine by allowing Compton to invoke the judicial process despite failing to complete administrative review.

### B. Incident Report Number 2828416

Compton's claim, that his due process rights were violated in the context of the disciplinary hearing process on Incident Report Number 2828416, and that these violations resulted in a loss of good conduct time, is properly the subject of this habeas petition because it directly impacts the duration of his confinement. The Due Process Clause of the Fifth Amendment of the Constitution of the United States provides: "No person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. CONST. amend. V. Federal inmates possess a liberty interest in good conduct time. *See Wolff v. McDonnell*, 418 U.S. 539, 555-57 (1974); *Young v. Kann*, 926 F.2d 1396, 1399 (3d Cir. 1991).

When a prison disciplinary hearing may result in the loss of good conduct time credits, due process requires that the prisoner receive certain due process protections: 1) written notice of the claimed violation at least twenty-four (24) hours in advance of the hearing; 2) the opportunity to call witnesses and present documentary evidence when consistent with institutional and correctional goals; 3) assistance in presenting a defense if the inmate is illiterate; 4) an impartial tribunal; and 5) a written statement by the factfinder as to evidence relied on and reasons for the disciplinary action. *See Wolff*, 418 U.S. at 564. The written statement of the factfinder will be upheld if there is "some evidence" in the record to support the decision. *Hill*, 472 U.S. 445, 455 (1985); *see also Young v. Kann*, 926 F.2d 1396, 1402-03 (3d Cir. 1991) (applying *Hill* standard to federal prisoner due process challenges to prison disciplinary proceedings). The determination of whether the standard is satisfied "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* at 455.

Compton first asserts that the DHO was not impartial. (Doc. 1, p. 17). In the context of prison disciplinary proceedings, due process requires that the

disciplinary tribunal be sufficiently impartial. *Meyers v. Alldredge*, 492 F.2d 296, 305–07 (3d Cir.1974); *see also Wolff*, 418 U.S. 539 (disciplinary committee was sufficiently impartial so as not to violate due process). In order to insure impartiality, the DHO may not be a victim, witness, investigator, or otherwise significantly involved in the incident. 28 C.F.R. § 541.8(b). The requirement of an impartial tribunal "prohibits only those officials who have a direct personal or otherwise substantial involvement, such as major participation in a judgmental or decision-making role, in the circumstances underlying the charge from sitting on the disciplinary committee." *Meyers*, 492 F.2d at 306. The *Meyers* case involved disciplinary action against members of a prisoners' committee involved in the work stoppage. During the work stoppage, an associate warden had considerable contact with the prisoners' committee. Thereafter, the same associate warden served on the disciplinary committee. The *Meyers* court concluded that the presence of the associate warden on the disciplinary committee denied the prisoners an impartial tribunal. 492 F.2d at 305–07. In the matter *sub judice*, the DHO did not have a direct personal or otherwise substantial involvement, such as major participation in the investigation or in the circumstances underlying the charge. Hence, this claim is without merit.

Compton also alleges that the DHO's findings violated his due process rights because he is actually innocent of the charge. (Doc. 1, p. 17). He asserts that he should have been charged with the lesser offense of Indecent Exposure. (*Id.*) 28 C.F.R. § 541.3, Table 1 categorizes a Code 205 violation as a high severity violation and defines such a violation as "engaging in sexual acts." The DHO relied on the eyewitness account of the officer who wrote the incident report, the testimony of Compton and the testimony of Bulluck, Compton's cellmate. In arriving at a finding of guilt, the DHO gave the greater weight of the evidence to the reporting officer. (Doc. 6-1, p. 39). He meticulously enumerated reasons why he found the inmates' testimony less credible than the eyewitness account of the reporting officer. (*Id.*). It is clear that the finding that Compton engaged in a sexual act in violation of Code 205 of the BOP disciplinary code has some evidentiary support in the record before the DHO.

### III. CONCLUSION

Based on the foregoing, the petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 will be denied.

The Court will enter an appropriate Order.